A. MICHAEL DeCESARE
1021 No. Abby Street
Fresno, California 93701
Telephone: (559) 457-0809
Telecopier: (559) 457-0810

Plaintiff, A. MICHAEL De CESARE in propria persona

FILED

02 OCT 25  PM 2: 07

CLERK
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

8:02CV1978-T-26 MAP

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

* * * * * *

| | |
|---|---|
| A. MICHAEL De CESARE, ) | CASE NO: |
| Plaintiff, ) | |
| ) | COMPLAINT FOR MONEY |
| v. ) | (Negligence, Breach of Contract – |
| ) | Property Insurance Policy, Breach of |
| ROYAL INSURANCE COMPANY OF ) | Insurance Contract, Tortious Breach of |
| AMERICA aka ROYAL & SUN ) | Insurance Contract for Actual and |
| ALLIANCE, POE & BROWN, INC., ) | Punitive Damages, Breach of Contract) |
| BROWN & BROWN, INC., SANDRA ) | |
| GODDARD, and DOES 1 through 100, ) | Jury Trial Requested |
| ) | |
| Defendants. ) | |

Plaintiff, A. MICHAEL De CESARE, alleges as follows:

## JURISDICTION AND VENUE

1.    Plaintiff, A. MICHAEL De CESARE, (hereinafter plaintiff or "De

CESARE") resides at 536 Sundance Lane, Madera, California 93637 -- within the Eastern

District of the State of California.

2.    Defendant, ROYAL INSURANCE COMPANY OF AMERICA,

(hereinafter "ROYAL") is, and at all times herein mentioned was, a corporation duly organized

and existing under the laws of the State of Illinois with its principal place of business in

Syracuse, Onondaga County, New Jersey.

3.    Defendant, POE & BROWN, INC. (hereinafter "POE") is, and at all times

T 18652
# 150.00

1

herein mentioned was, a corporation duly organized and existing under the laws of the State of Florida with its principal place of business in Sarasota, Sarasota County, Florida.

4. Defendant, BROWN & BROWN, INC (hereinafter "BROWN") is, and at all times herein mentioned was, a corporation duly organized and existing under the laws of the State of Florida with its principal place of business located in Sarasota, Sarasota County, Florida.

5. Defendant, SANDRA GODDARD (hereinafter "GODDARD") is, and at all times herein mentioned was, an individual insurance agent with her principal place of business located in Sarasota, Sarasota County, Florida.  Her specific individual residence is unknown, but is believed to be located in Sarasota, Sarasota County, Florida.

6. The events or omissions which give rise to the claims made herein occurred in Sarasota, Sarasota County, Florida.  The home which was insured by the defendants is/was located at 1620 Memory Lane, Sarasota, Florida – within the Middle District of the State of Florida.  The wrongful payment of insurance proceeds alleged herein was made within Sarasota, Sarasota County, Florida – within the Middle District of the State of Florida.

7. This Court is vested with jurisdiction pursuant to Section 1332(a)(1) of Title 28 of the United States Code (28 USCS § 1332(a)(1)).

8. This Court is the proper venue for this action pursuant to Section 1391(a) of Title 28 of the United States Code (28 USCS § 1391(a)).

9. Plaintiff is ignorant of the true names and capacities of defendants named herein as Does 1- 100, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that plaintiff's damages as herein alleged were proximately caused by that negligence.

10. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the defendants was the agent and employee of each of the remaining

2

defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment.

**FIRST CAUSE OF ACTION:**

   **NEGLIGENCE**

   11.   Plaintiff hereby incorporates and realleges paragraphs 1 through 10 above as though fully set forth herein.

   12.   On or about June 3, 1995, plaintiff and his then wife, Dorothy, purchased a homeowner's insurance policy from defendant, ROYAL, through defendants POE, BROWN and GODDARD — policy #PKG346913H. Both plaintiff and Dorothy were listed as insureds, and thus were beneficiaries on said policy.

   13.   On or about July 31, 1995, plaintiff and Dorothy separated.

   14.   On or about July 30, 1997, Dorothy filed for dissolution of marriage.

   15.   On or about January 10, 2002 the settlement of that dissolution was entered on the record.

   16.   On or about and effective October 15, 1997, Dorothy, contacted defendants, POE and BROWN through GODDARD (the insurance agent) and requested that plaintiff's name be removed from the policy.  Defendants POE and BROWN through GODDARD forwarded this request on to defendant ROYAL three times (10/15/97, 12/9/97, and 1/23/98).

   17.   Effective 10/16/97, defendants, and each of them, negligently removed plaintiff's name from the policy in question, so as to cause plaintiff to be excluded from any and all insurance coverage provided thereunder and to thus proximately cause the injuries and damages described below.

3

18.  On or about April 26, 1999, the dissolution of plaintiff and Dorothy's marriage was finalized.

19.    As a proximate result of the negligence of defendants, and each of them, Plaintiff was damaged, in that the subject property sustained damage on or about September 17, 2000 and proceeds from that loss were subsequently paid solely to plaintiff's former wife on or about March 17, 2001.  Plaintiff received nothing, his portion of the proceeds were also paid to his former wife, although he still held a legal interest in the property as tenants in common on the homestead.

20.  On or about January 10, 2002 the settlement of property in the dissolution of plaintiff's marriage was entered on the record.

**SECOND CAUSE OF ACTION:**

**BREACH OF CONTRACT -- PROPERTY INSURANCE POLICY**

21.  Plaintiff hereby incorporates and realleges paragraphs 1 through 10 and 11 through 20 above as though fully set forth herein.

22.  At all times herein mentioned, through the time of loss as herein alleged, plaintiff was a legal owner as tenants in common on the homestead with Dorothy of that certain real property described as the residence at 1620 Memory Lane, Sarasota, Florida.

23.  On or about June 3, 1995, in consideration of the payment of an annual premium of $1,316.00 made by plaintiff, defendants, and each of them, by their duly authorized agents, executed and delivered to plaintiff in Fresno, Fresno County, California its policy of insurance bearing number PKG346913H, hereinafter referred to as "the policy," wherein and whereby defendants insured plaintiff in the sum of $225,000 dwelling Coverage A, $22,500.00 other structures Coverage B, $123,750.00 personal property Coverage C, $45,000.00 loss of use

4

Coverage D, $300,000.00 personal liability Coverage E, $1,000.00 med pay Coverage F, for the term from June 3, 1995 to June 3, 1996 against damages by fire, wind, water, and others to the property described as the residence at 1620 Memory Lane, Sarasota, Florida, and described in the policy as set forth therein. . (A copy of the policy is attached hereto as "Exhibit A" and is hereby incorporated by reference herein.)

24.  This policy was continued by plaintiff with defendants through June 3, 2001, at which time defendants chose not to renew.  (A copy of the policy and various renewals through June 3, 2001 are attached hereto as "Exhibits A & B" and are hereby incorporated by reference herein.)

25.  On or about September 17, 2000, while the policy was in full force and effect, the above-described property sustained damage by wind and water for a total loss payment of $496,000.00 with unknown sums paid for personal property contained therein -- to plaintiff's loss and damage in the sum of $248,000.00 and one half of the sums paid for personal property.

26.  Defendants made payment solely to Dorothy and did not make any payment to plaintiff, and defendants, and each of them, have failed and refused, and continue to fail and refuse, to pay plaintiff his half of the proceeds or any part of it.  There is now due, owing, and unpaid to plaintiff from defendant the sum of  $248,000.00 and one half of the sums paid for personal property contained therein.

27. As a proximate result of defendant's failure and refusal as herein alleged, plaintiff has been damaged in the sum of $248,000.00 and one half of the sums paid for personal property contained therein, with interest on that sum at the legal rate from and after March 17, 2001.

/ / /

/ / /

5

### THIRD CAUSE OF ACTION:

### BREACH OF INSURANCE CONTRACT

28.   Plaintiff realleges all allegations of paragraphs 1 through 10, 11 through 20, and 21 through 27 as though fully set forth herein.

29.   On or about June 3, 1995, in consideration of the payment of an annual premium of $1,316.00, made by plaintiff, defendants, and each of them, by their duly authorized agents, executed and delivered to plaintiff in Fresno, Fresno County, California, their policy of insurance bearing number PKG346913H, hereinafter referred to as "the policy," in and by which defendants undertook to and did insure the residence located at 1620 Memory Lane, Sarasota, Florida against loss or damage by fire, wind, water, and others in the sum of $225,000 dwelling Coverage A, $22,500.00 other structures Coverage B, $123,750.00 personal property Coverage C, $45,000.00 loss of use Coverage D, $300,000.00 personal liability Coverage E, $1,000.00 med pay Coverage F. Overtime, these limits were raised such that in 2001, they were as follows: $281,000 dwelling Coverage A, $28,100.00 other structures Coverage B, $154,550.00 personal property Coverage C, $56,200.00 loss of use Coverage D, $300,000.00 personal liability Coverage E, $1,000.00 med pay Coverage F. Under the policy, defendants promised to pay plaintiff as his interest might appear, up to the sums listed hereinabove, on the occurrence of a covered event. Plaintiff continued and renewed the policy with defendants from June 3, 1995 through June 3, 2001. The policy by its terms was in effect from June 3, 2000 through June 3, 2001. (A copy of the policy and each of the renewals are attached hereto as "Exhibits A & B" and are hereby incorporated by reference herein.)

30.   At the time the policy was issued and the insurance took effect and at all times since to and including the time the loss as herein alleged occurred, plaintiff and Dorothy were the owners of the property described in the policy as tenants in common.

31.   On or about September 17, 2000, while the policy was in full force and effect, the property described in and covered by the policy was damaged by wind and water to

6

plaintiff's loss and damage in the sum of $496,000.00 with unknown sums paid for personal property contained therein. By reason thereof, under the terms of the policy, plaintiff became entitled to receive from defendant, and defendant became obligated to pay to plaintiff $248,000.00 and one half of the sums paid for personal property contained therein. Under the terms of the policy payment by defendants to plaintiff was required on or before March 17, 2001.

32. All premiums were paid prior to their due date and plaintiff had thus performed all conditions of the policy on his part to be performed and, in accordance with the terms of the policy. Plaintiff, through Dorothy, gave defendants due and timely notice and filed a proof of loss.

33. Plaintiff has notified defendants of his right to payment of the insured sums (to wit $248,000.00 and one half of the sums paid for personal property), but defendants have failed and refused, and continue to fail and refuse, to pay plaintiff those sums or any part thereof.

34. Defendants, and each of them, failed to investigate the circumstance before removing plaintiff as an insured on the policy, and merely paid all monies due under the policy to Dorothy.

35. As a proximate result of defendants' failure and refusal as herein alleged, plaintiff has been damaged in the sum of $248,000.00 and one half of the sums paid for personal property with interest on that sum at the legal rate from March 17, 2001 to present and continuing.

36. The acts of defendants alleged hereinabove, were done maliciously and oppressively and with the intent of defrauding plaintiff. Plaintiff is therefore entitled to exemplary or punitive damages in an additional sum to be determined according to proof.

**FOURTH CAUSE OF ACTION:**

**TORTIOUS BREACH OF INSURANCE CONTRACT FOR ACTUAL AND PUNITIVE DAMAGES**

37. Plaintiff realleges all allegations of paragraphs 1 through 10, 11 through 20, 21 through 27, and 28 through 36 as though fully set forth herein.

38.  At all times herein mentioned, plaintiff had in full force and effect a written insurance policy, number PKG346913H, hereinafter referred to as "the policy," issued to plaintiff as the insured by defendant and covering the residence located at 1620 Memory Lane, Sarasota, Florida, as previously entitled "the property," of which plaintiff was a tenant in common owner.  Implied in the policy was a covenant by the defendants that they would act in good faith and deal fairly with the insured and that they would do nothing to interfere with the rights of their insured to receive the benefits of the agreement.

39.  The policy, among other things, provided coverage as stated therein.  Please see a copy of the policy which is attached hereto as "Exhibit A" and hereby incorporated by reference herein.

40.  The initial limits of liability under the homeowner's coverage was $225,000 dwelling Coverage A, $22,500.00 other structures Coverage B, $123,750.00 personal property Coverage C, $45,000.00 loss of use Coverage D, $300,000.00 personal liability Coverage E, $1,000.00 med pay Coverage F. Over time, these limits were raised such that in 2001, they were as follows: $281,000 dwelling Coverage A, $28,100.00 other structures Coverage B, $154,550.00 personal property Coverage C, $56,200.00 loss of use Coverage D, $300,000.00 personal liability Coverage E, $1,000.00 med pay Coverage F.

41.  On or about September 17, 2000 the covered residence sustained wind and water damage, without any fault on the part of plaintiff or Dorothy.

42.  By the provisions of the policy, defendants represented to plaintiff that if plaintiff complied with all the terms and conditions of the policy, defendants would pay to plaintiff the amount of damages up to the policy limit which he was legally entitled to recover from the policy.  Plaintiff duly complied with all the terms and conditions of the policy on his part to be performed and was legally entitled to recover insurance proceeds from the policy for the damage to the residence.  Consequently, plaintiff became entitled to receive from defendants payment in the amount of $248,000.00 and one half of the sums paid for personal property with

8

interest on that sum at the legal rate from March 17, 2001 to present and continuing.

43.    However, defendants, and each of them, caused plaintiff's name to be removed as an insured under the policy at the verbal request of plaintiff Dorothy.  Plaintiff's name should not have been removed from the policy as he remained a tenant in common with Dorothy on the property in question at all times relevant herein.

44.    Defendants' representation that they would provide insurance coverage to plaintiff was false and fraudulent in that defendants never intended to pay any proceeds to plaintiff whom they had erroneously deleted from the named insureds under the policy.  At the time the defendants entered into the insurance contract with plaintiff, defendants, and each of them willfully concealed the above facts, all for the purpose of defrauding and deceiving plaintiff and inducing him to renew the policy.

45.    Plaintiff, at the time the representation was made, believed it to be true and, in reliance on it, was induced to, and did, enter into the insurance contract with defendants; had plaintiff known the true facts, the policy would not have been renewed.

46.    At all times relevant herein, defendants knew that plaintiff was legally entitled to coverage under the policy and that defendants were therefore obligated to pay plaintiff at least one half of the proceeds under the policy.

47.    Notwithstanding defendants' knowledge of their obligation to pay plaintiff at least one half of the proceeds under the policy, defendants, and each of them, failed to do so, and so much as admitted that they were liable, but have failed to make any payment to plaintiff whatsoever.

48.    For the sole purpose of compelling plaintiff to accept lack of payment or, if he persisted in seeking payment of the proceeds to which he was entitled, to incur substantial detriment, delay, and additional expenditures in pursuing enforcement of his claim, all during which time defendants would retain use of the money and erroneously paid Dorothy the entire proceeds, defendants, and each of them, in breach of their covenant of good faith and fair

9

dealing, intentionally, maliciously, and oppressively refused and failed to pay plaintiff any of the insurance proceeds under the policy for the damage to the covered residence in accordance with the terms of the policy.

49.  As a direct and proximate result of defendant's wrongful conduct as herein alleged, plaintiff suffered loss of use of the $248,000.00 and one half of the sums paid for personal property with interest on that sum at the legal rate from March 17, 2001 to present and continuing.

50.  As a further direct and proximate result of defendants' wrongful conduct as herein alleged, plaintiff sustained emotional and mental distress and anguish, embarrassment, mortification, humiliation, and indignity, all to his general damage in a sum to be determined according to proof.

51.  Defendants' wrongful conduct as herein alleged was done intentionally and was malicious, oppressive, and fraudulent in nature.  Plaintiff is therefore entitled to recover punitive damages.

## FIFTH CAUSE OF ACTION:

### BREACH OF CONTRACT

52.  Plaintiff realleges all allegations of paragraphs 1 through 10, 11 through 20, 21 through 27, 28 through 36, and 37 through 51 as though fully set forth herein.

53.  On or about June 3, 1995 at Fresno, Fresno County, California, plaintiff and defendant entered into a written agreement, copies of which are attached hereto as "Exhibits A & B" and incorporated by reference herein.

54.  Plaintiff has performed all conditions, covenants, and promises required by him on his part to be performed in accordance with the terms and conditions of the contract.

55.  On or about September 17, 2000, there was a hurricane such that the covered residence sustained damage from both wind and water.

56.  Plaintiff has notified defendants of his right to payment of the insured sums

10

(to wit $248,000.00 and one half of the sums paid for personal property), but defendants have failed and refused, and continue to fail and refuse, to pay plaintiff those sums or any part thereof.

57.  On or about March 17, 2001, defendants, and each of them, breached the contract by paying the insurance proceeds to Dorothy and paying nothing to plaintiff.

58.  As a result of defendants' breach of the contract, plaintiff has not received any of the insurance proceeds, to his damage in the sum of $248,000.00 and one half of the sums paid for personal property with interest on that sum at the legal rate from March 17, 2001 to present and continuing.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays judgment against defendants, and each of them, as follows:

1.   For general damages in the sum of $250,000.00;

2.   For special damages in the sum of $248,000.00 and one half of the unknown sums paid for the personal property within the covered residence;

2.   For punitive damages in a sum to be determined according to proof, and within the jurisdiction of this court;

4.   For costs of suit herein incurred; and

5.   For such other and further relief as the court may deem just and proper.

DATED: October 24, 2002

A. MICHAEL DeCESARE
1021 No. Abby Street
Fresno, California 93701
Telephone: (559) 457-0809
Telecopier: (559) 457-0810

11

# EXHIBIT "A"

# HOMEOWNERS 3
# SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "Business" includes trade, profession or occupation.

3. "Insured" means you and residents of your household who are:

   a. Your relatives; or

   b. Other persons under the age of 21 and in the care of any person named above.

   Under Section II, "insured" also means:

   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";

   d. With respect to any vehicle to which this policy applies:

      (1) Persons while engaged in your employ or that of any person included in 3.a. or 3.b. above; or

      (2) Other persons using the vehicle on an "insured location" with your consent.

4. "Insured location" means:

   a. The "residence premises";

   b. The part of other premises, other structures and grounds used by you as a residence and:

      (1) Which is shown in the Declarations; or

      (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with a premises in 4.a. and 4.b. above;

   d. Any part of a premises:

      (1) Not owned by an "insured"; and

      (2) Where an "insured" is temporarily residing;

   e. Vacant land, other than farm land, owned by or rented to an "insured";

   f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

   g. Individual or family cemetery plots or burial vaults of an "insured"; or

   h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "Bodily injury"; or

   b. "Property damage."

6. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

7. "Residence employee" means:

   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises," including household or domestic services; or

   b. One who performs similar duties elsewhere not related to the "business" of an "insured."

8. "Residence premises" means:

   a. The one family dwelling, other structures, and grounds; or

   b. That part of any other building;

   where you reside and which is shown as the "residence premises" in the Declarations.

   "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

# SECTION I - PROPERTY COVERAGES

## COVERAGE A - Dwelling

We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."

This coverage does not apply to land, including land on which the dwelling is located.

## COVERAGE B - Other Structures

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. Used in whole or in part for "business"; or

2. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

## COVERAGE C - Personal Property

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";

2. A guest or a "residence employee," while the property is in any residence occupied by an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises," is 10% of the limit of liability for Coverage C, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.

4. $1000 on trailers not used with watercraft.

5. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.

6. $2000 for loss by theft of firearms.

7. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

8. $2500 on property, on the "residence premises," used at any time or in any manner for any "business" purpose.

9. $250 on property, away from the "residence premises," used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.

10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

    a. Accessories or antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus.

    Copyright, Insurance Services Office, Inc., 1990    HO 00 03 04 91

**11.$1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:**

**a.** Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

**b.** Is away from the "residence premises"; and

**c.** Is used at any time or in any manner for any "business" purpose.

Electronic apparatus includes:

**a.** Accessories and antennas; or

**b.** Tapes, wires, records, discs or other media;

for use with any electronic apparatus.

**Property Not Covered. We do not cover:**

1. Articles separately described and specifically insured in this or other insurance;

2. Animals, birds or fish;

3. Motor vehicles or all other motorized land conveyances. This includes:

   **a.** Their equipment and accessories; or

   **b.** Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

   **(1)** Accessories or antennas; or

   **(2)** Tapes, wires, records, discs or other media;

   for use with any electronic apparatus.

   The exclusion of property described in **3.a.** and **3.b.** above applies only while the property is in or upon the vehicle or conveyance.

   We do cover vehicles or conveyances not subject to motor vehicle registration which are:

   **a.** Used to service an "insured's" residence; or

   **b.** Designed for assisting the handicapped;

4. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

6. Property in an apartment regularly rented or held for rental to others by an "insured," except as provided in Additional Coverages **10.**;

7. Property rented or held for rental to others off the "residence premises";

8. "Business" data, including such data stored in:

   **a.** Books of account, drawings or other paper records; or

   **b.** Electronic data processing tapes, wires, records, discs or other software media;

   However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

9. Credit cards or fund transfer cards except as provided in Additional Coverages **6.**

**COVERAGE D - Loss Of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph **b.** below.

   **a.** **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or

   **b.** **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.

   Payment under **a.** or **b.** will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

   **Fair Rental Value,** meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under **1.** and **2.** above for no more than two weeks.

HO 00 03 04 91

The periods of time under **1.**, **2.** and **3.** above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

**ADDITIONAL COVERAGES**

**1. Debris Removal.** We will pay your reasonable expense for the removal of:

   **a.** Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   **b.** Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

   We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

   **a.** Your tree(s) felled by the peril of Windstorm or Hail;

   **b.** Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

   **c.** A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

   provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

**2. Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

   This coverage:

   **a.** Does not increase the limit of liability that applies to the covered property;

   **b.** Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I - CONDITION 2.d.

**3. Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

   We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

   This coverage is additional insurance.

**4. Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

   This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

   We will pay up to $500 for:

   **a.** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

   **b.** Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

   **c.** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

   **d.** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover use of a credit card or fund transfer card:

a. By a resident of your household;

b. By a person who has been entrusted with either type of card; or

c. If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured."

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

a. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

b. If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

c. We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under COVERAGE A - DWELLING, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition 1. Policy Period, under SECTIONS I AND II CONDITIONS, does not apply to this coverage.

8. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

a. Perils Insured Against in COVERAGE C - PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

b. Hidden decay;

c. Hidden insect or vermin damage;

d. Weight of contents, equipment, animals or people;

e. Weight of rain which collects on a roof; or

f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items **b.**, **c.**, **d.**, **e.**, and **f.** unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit of liability applying to the damaged covered property.

9. **Glass or Safety Glazing Material.**

We cover:

a. The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

b. Damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

This coverage does not include loss on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

HO 00 03 04 91

**10. Landlord's Furnishings.** We will pay up to $2500 for your appliances, carpeting and other household furnishings, in an apartment on the "residence premises" regularly rented or held for rental to others by an "insured," for loss caused only by the following Perils Insured Against:

a. **Fire or lightning.**

b. **Windstorm or hail.**

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

c. **Explosion.**

d. **Riot or civil commotion.**

e. **Aircraft,** including self-propelled missiles and spacecraft.

f. **Vehicles.**

g. **Smoke,** meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

h. **Vandalism or malicious mischief.**

i. **Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

j. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

k. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

(1) To the system or appliance from which the water or steam escaped;

(2) Caused by or resulting from freezing except as provided in the peril of freezing below; or

(3) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

l. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

m. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain the system and appliances of water.

n. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

o. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

The $2500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss.

## SECTION I - PERILS INSURED AGAINST

**COVERAGE A - DWELLING and COVERAGE B - OTHER STRUCTURES**

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

1. Involving collapse, other than as provided in Additional Coverage 8.;

2. Caused by:

a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain the system and appliances of water;

b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(1) Fence, pavement, patio or swimming pool;

(2) Foundation, retaining wall, or bulkhead; or

(3) Pier, wharf or dock;

c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

d. Vandalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

e. Any of the following:

(1) Wear and tear, marring, deterioration;

(2) Inherent vice, latent defect, mechanical breakdown;

(3) Smog, rust or other corrosion, mold, wet or dry rot;

(4) Smoke from agricultural smudging or industrial operations;

(5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

(7) Birds, vermin, rodents, or insects; or

(8) Animals owned or kept by an "insured."

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

3. Excluded under Section I - Exclusions.

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

## COVERAGE C - PERSONAL PROPERTY

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I - EXCLUSIONS.

1. **Fire or lightning.**

2. **Windstorm or hail.**

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

7. **Smoke,** meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief.**

9. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

This peril does not include loss caused by theft:

a. Committed by an "insured";

b. In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

HO 00 03 04 91

c. From that part of a "residence premises" rented by an "insured" to other than an "insured."

This peril does not include loss caused by theft that occurs off the "residence premises" of:

a. Property while at any other residence owned by, rented to, or occupied by an "insured," except while an "insured" is temporarily living there. Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

b. Watercraft, and their furnishings, equipment and outboard engines or motors; or

c. Trailers and campers.

10. **Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

a. To the system or appliance from which the water or steam escaped;

b. Caused by or resulting from freezing except as provided in the peril of freezing below; or

c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises."

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while the dwelling is unoccupied, unless you have used reasonable care to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to a tube, transistor or similar electronic component.

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

---

## SECTION I - EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

   a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

   b. **Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

      (1) Fire;

      (2) Explosion; or

   (3) Breakage of glass or safety glazing material which is part of a building, storm door or storm window;

   ensues and then we will pay only for the ensuing loss.

   This exclusion does not apply to loss by theft.

   c. **Water Damage,** meaning:

      (1) Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

      (2) Water which backs up through sewers or drains or which overflows from a sump; or

---

· Copyright, Insurance Services Office, Inc., 1990

(3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

**d. Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises." But, if a Peril Insured Against ensues on the "residence premises," we will pay only for that ensuing loss.

**e. Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**f. War,** including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**g. Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I - CONDITIONS.

**h. Intentional Loss,** meaning any loss arising out of any act committed:

(1) By or at the direction of an "insured"; and

(2) With the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

**a. Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

**b. Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body;

**c. Faulty, inadequate or defective:**

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property whether on or off the "residence premises."

---

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

a. To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

b. For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

a. Give prompt notice to us or our agent;

b. Notify the police in case of loss by theft;

c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

d. Protect the property from further damage. If repairs to the property are required, you must:

(1) Make reasonable and necessary repairs to protect the property; and

(2) Keep an accurate record of repair expenses;

e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

f. As often as we reasonably require:

(1) Show the damaged property; and

(2) Provide us with records and documents we request and permit us to make copies; and

(3) Submit to examination under oath, while not in the presence of any other "insured," and sign the same;

**HO 00 03 04 91**

g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) The time and cause of loss;

(2) The interest of the "insured" and all others in the property involved and all liens on the property;

(3) Other insurance which may cover the loss;

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged personal property described in **2.e.** above;

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

**3. Loss Settlement.** Covered property losses are settled as follows:

a. Property of the following types:

(1) Personal property;

(2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

(3) Structures that are not buildings;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) The limit of liability under this policy that applies to the building;

(b) The replacement cost of that part of the building damaged for like construction and use on the same premises; or

(c) The necessary amount actually spent to repair or replace the damaged building.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(a) The actual cash value of that part of the building damaged; or

(b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(a) Excavations, foundations, piers or any supports which are below the undersurface of the lowest basement floor;

(b) Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(c) Underground flues, pipes, wiring and drains.

(4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of b.(1) and b.(2) above.

However, if the cost to repair or replace the damage is both:

(a) Less than 5% of the amount of insurance in this policy on the building; and

(b) Less than $2500;

we will settle the loss according to the provisions of **b.(1)** and **b.(2)** above whether or not actual repair or replacement is complete.

    Copyright, Insurance Services Office, Inc., 1990    HO 00 03 04 91

**(5)** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

**4. Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

**a.** Repair or replace any part to restore the pair or set to its value before the loss; or

**b.** Pay the difference between actual cash value of the property before and after the loss.

**5. Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

**6. Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**a.** Pay its own appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

**7. Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

**8. Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

**9. Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

**10. Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

**a.** Reach an agreement with you;

**b.** There is an entry of a final judgment; or

**c.** There is a filing of an appraisal award with us.

**11. Abandonment of Property.** We need not accept any property abandoned by an "insured."

**12. Mortgage Clause.**

The word "mortgagee" includes trustee.

If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

**a.** Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

**b.** Pays any premium due under this policy on demand if you have neglected to pay the premium; and

**c.** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

**a.** We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

**b.** At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

HO 00 03 04 91

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**

   a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

   b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

   c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

15. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

16. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

## SECTION II - LIABILITY COVERAGES

**COVERAGE E - Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

**COVERAGE F - Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury." Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees." As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location," if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured."

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to "bodily injury" or "property damage":

   a. Which is expected or intended by the "insured";

   b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":

(1) On an occasional basis if used only as a residence;

(2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(3) In part, as an office, school, studio or private garage;

d. Arising out of the rendering of or failure to render professional services;

e. Arising out of a premises:

(1) Owned by an "insured";

(2) Rented to an "insured"; or

(3) Rented to others by an "insured";

that is not an "insured location";

f. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";

(2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

This exclusion does not apply to:

(1) A trailer not towed by or carried on a motorized land conveyance.

(2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

(a) Not owned by an "insured"; or

(b) Owned by an "insured" and on an "insured location";

(3) A motorized golf cart when used to play golf on a golf course;

(4) A vehicle or conveyance not subject to motor vehicle registration which is:

(a) Used to service an "insured's" residence;

(b) Designed for assisting the handicapped; or

(c) In dead storage on an "insured location";

g. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

(2) The entrustment by an "insured" of an excluded watercraft described below to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an "insured." This exclusion does not apply to watercraft:

(1) That are not sailing vessels and are powered by:

(a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";

(b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";

(c) One or more outboard engines or motors with 25 total horsepower or less;

(d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";

(e) Outboard engines or motors of more than 25 total horsepower owned by an "insured" if:

(i) You acquire them prior to the policy period; and

(a) You declare them at policy inception; or

(b) Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.

(ii) You acquire them during the policy period.

This coverage applies for the policy period.

(2) That are sailing vessels, with or without auxiliary power:

(a) Less than 26 feet in overall length;

(b) 26 feet or more in overall length, not owned by or rented to an "insured."

**(3)** That are stored;

**h.** Arising out of:

**(1)** The ownership, maintenance, use, loading or unloading of an aircraft;

**(2)** The entrustment by an "insured" of an aircraft to any person; or

**(3)** Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

**i.** Caused directly or indirectly by war, including the following and any consequence of any of the following:

**(1)** Undeclared war, civil war, insurrection, rebellion or revolution;

**(2)** Warlike act by a military force or military personnel; or

**(3)** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**j.** Which arises out of the transmission of a communicable disease by an "insured";

**k.** Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**l.** Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

Exclusions **e., f., g.,** and **h.** do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured."

**2. Coverage E - Personal Liability**, does not apply to:

**a.** Liability:

**(1)** For any loss assessment charged against you as a member of an association, corporation or community of property owners;

**(2)** Under any contract or agreement. However, this exclusion does not apply to written contracts:

**(a)** That directly relate to the ownership, maintenance or use of an "insured location"; or

**(b)** Where the liability of others is assumed by the "insured" prior to an "occurrence";

unless excluded in **(1)** above or elsewhere in this policy;

**b.** "Property damage" to property owned by the "insured";

**c.** "Property damage" to property rented to, occupied or used by or in the care of the "insured." This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

**d.** "Bodily injury" to any person eligible to receive any benefits:

**(1)** Voluntarily provided; or

**(2)** Required to be provided;

by the "insured" under any:

**(1)** Workers' compensation law;

**(2)** Non-occupational disability law; or

**(3)** Occupational disease law;

**e.** "Bodily injury" or "property damage" for which an "insured" under this policy:

**(1)** Is also an insured under a nuclear energy liability policy; or

**(2)** Would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

**(1)** American Nuclear Insurers;

**(2)** Mutual Atomic Energy Liability Underwriters;

**(3)** Nuclear Insurance Association of Canada,

or any of their successors; or

**f.** "Bodily injury" to you or an "insured" within the meaning of part **a.** or **b.** of "insured" as defined.

**3. Coverage F - Medical Payments to Others** does not apply to "bodily injury":

**a.** To a "residence employee" if the "bodily injury":

**(1)** Occurs off the "insured location"; and

**(2)** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

b. To any person eligible to receive benefits:

(1) Voluntarily provided; or

(2) Required to be provided;

under any:

(1) Workers' compensation law;

(2) Non-occupational disability law; or

(3) Occupational disease law;

c. From any:

(1) Nuclear reaction;

(2) Nuclear radiation; or

(3) Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

(4) Any consequence of any of these; or

d. To any person, other than a "residence employee" of an "insured," regularly residing on any part of the "insured location."

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. Expenses we incur and costs taxed against an "insured" in any suit we defend;

   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

   c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit; and

   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to you or any other "insured."

3. **Damage to Property of Others.** We will pay, at replacement cost, up to $500 per "occurrence" for "property damage" to property of others caused by an "insured."

   We will not pay for "property damage":

   a. To the extent of any amount recoverable under Section I of this policy;

   b. Caused intentionally by an "insured" who is 13 years of age or older;

   c. To property owned by an "insured";

   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

   e. Arising out of:

      (1) A "business" engaged in by an "insured";

      (2) Any act or omission in connection with a premises owned, rented or controlled by an "insured," other than the "insured location"; or

      (3) The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

      This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an "insured."

4. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded under Section II of this policy; or

   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

      (1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

      (2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

   This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises."

HO 00 03 04 91

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of:

a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section II - Coverage E - Personal Liability Exclusion 2.a.(1);

2. Condition 1. Policy Period, under SECTIONS I AND II - CONDITIONS.

## SECTION II - CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds," claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured." This condition will not increase our limit of liability for any one "occurrence."

3. **Duties After Loss.** In case of an accident or "occurrence," the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:

a. Give written notice to us or our agent as soon as is practical, which sets forth:

(1) The identity of the policy and "insured";

(2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and

(3) Names and addresses of any claimants and witnesses;

b. Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";

c. At our request, help us:

(1) To make settlement;

(2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

(3) With the conduct of suits and attend hearings and trials; and

(4) To secure and give evidence and obtain the attendance of witnesses;

d. Under the coverage - Damage to Property of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

e. The "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury."

4. **Duties of an Injured Person - Coverage F - Medical Payments to Others.**

The injured person or someone acting for the injured person will:

a. Give us written proof of claim, under oath if required, as soon as is practical; and

b. Authorize us to obtain copies of medical reports and records.

The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim - Coverage F - Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

**6. Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

**7. Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**8. Other Insurance - Coverage E - Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

---

## SECTIONS I AND II - CONDITIONS

**Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

**Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an "insured" has:

a. Intentionally concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made false statements;

relating to this insurance.

**Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

**Waiver or Change of Policy Provisions.**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**Cancellation.**

a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

(1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   (a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

   (b) If the risk has changed substantially since the policy was issued.

   This can be done by letting you know at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**6. Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**7. Assignment.** Assignment of this policy will not be valid unless we give our written consent.

    Copyright, Insurance Services Office, Inc., 1990

**HO 00 03 04 91**

8. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. "Insured" includes:

(1) Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

    Copyright, Insurance Services Office, Inc., 1990    **HO 00 03 04 91**

# EXHIBIT "B"

**ROYAL & SUNALLIANCE**

Coverage Summary
Homeowners

| | | | |
|---|---|---|---|
| *Insured:* | *Producer:* 6866615 | *Page:* | 1 |

DOROTHY DE CESARE

1620 MEMORY LANE

SARASOTA        FL 34231-3710

BROWN & BROWN, INC.
P.O. BOX 1179
SARASOTA        FL 34230-1179
941-366-5500

**Account Number** 501204863

**Policy Period** 06-03-2000 TO 06-03-2001        1 1F 12P

**Policy Number** PKG 3469BH
(RENEWAL CERTIFICATE)

**Issued by** ROYAL INSURANCE COMPANY OF AMERICA
(AN ILLINOIS CORPORATION)

### Your Coverage Summary

*Thank you for insuring with Royal & SunAlliance. Your Coverage Summary describes the home and other property covered by your policy, the types and amounts of coverage, and your premium. Your policy goes into effect at 12:01 A.M. standard time at the location insured.*

*Location of property insured:* 1620 MEMORY LANE
   (Residence Premises)

SARASOTA        FL 34231-3710        **ADD SURCHARGES BELOW

**Coverages**

This is not a bill.
BILLABLE PARTY:INSURED

Home, Contents and
Personal Liability

| **Total Policy Premium** | 1,946.00 |
|---|---|



**COVERAGE IS PROVIDED WHERE A PREMIUM OR LIMIT OF LIABILITY IS SHOWN FOR THE COVERAGE.**

| HOMEOWNER POLICY -- SECTION I | | | | | SECTION II | |
|---|---|---|---|---|---|---|
| DWELLING | OTHER STRUCTURES | PERSONAL PROPERTY | LOSS OF USE | PERSONAL LIABILITY | MED PAY | BASIC PREMIUM |
| COVERAGE A | COVERAGE B | COVERAGE C | COVERAGE D | COVERAGE E | COVERAGE F | |
| $ 281,000 | $ 28,100 | $ 154,550 | $ 56,200 | $ 300,000 | $ 1,000 | $ 1,703.00 |

*In case of a loss under Section I of the policy, we cover only that part of the loss above the Deductible.*
*You have selected a Deductible of $*        250/EXCEPT $ 5620( 2 %    HURRICANE )

| Additional Coverages and Credits | Amount of Coverage | Premium |
|---|---|---|
| **SURCHARGES NOT INCLUDED IN POLICY PREMIUM** | | |
| ** FLORIDA PROPERTY SURCHARGE | | 2.00 |
| ********************** | | |
| YOUR POLICY HAS A SEPARATE HURRICANE DEDUCTIBLE | | |
| SEE IMPORTANT NOTICE HP91485 | | |
| ********************** | | |
| HO 04 77   ORDINANCE OR LAW COVERAGE | | 169.00 |
| PREMIUM/CREDIT FOR DEDUCTIBLES | | 112.00- |
| HO 04 90   PERSONAL PROPERTY REPLACEMENT COST | | 169.00 |
| INCREASES ABOVE LIMIT OF LIAB FOR COVC BY 25% | | |
| HO 04 16   PREMISES ALARM OR FIRE PROTECTION SYSTEM | | 34.00- |
| HO 04 20   SPECIFIED ADDL AMT OF INS COV. A DWELLING | | 51.00 |

Signed By: *Terry Broderick*        Date: _____

Not Valid Unless Signed By A Duly Authorized Representative Of The Company        Agent's Countersignature (If Required)

HP89068-1 (Ed. 04/91)

PRODUCER'S COPY

04/14/2000 01:43:09
HM1211 3469BH

*06000*        MC8        P2-002234



**Coverage Summary**
Homeowners

| Continued from Previous Page | Policy Number | PKG 3469BH | Page 2 |
|---|---|---|---|

| Additional Coverages and Credits | Amount of Coverage | Premium |
|---|---|---|

```
      YOUR TOTAL POLICY PREMIUM INCLUDES AN AMOUNT OF $       543
      FOR COVERAGE DUE TO LOSS FROM A HURRICANE AND    $     1403
      FOR ALL OTHER COVERED LOSSES.

         *** FOR YOUR CONVENIENCE YOU ARE BEING BILLED
             ACCORDING TO THE FOLLOWING SCHEDULE:
             20% AND 8 INSTALLMENTS AT 10%
```



ROYAL &
SUNALLIANCE

*average Summary*
*Homeowners*

---

**Amendments to your policy**    **Policy Number**  PKG 3469BH    **Page**  3

## RUN DATE 04-14-00

| Number | Edition | Description |
|--------|---------|-------------|

PRIOR ATTACHMENTS ARE STILL APPLICABLE.
NEW ATTACHMENTS, IF ANY, ARE INDICATED WITH AN ASTERISK.

BUILDING CODE EFFECTIVENESS GRADE    99
HO 00 03    04-91    HOMEOWNERS SPECIAL FORM
HO 01 09    09-98    SPECIAL PROVISIONS - FL
HO 04 96    04-91    NO HOME DAY CARE COVERAGE
HO C4 77    06-94    ORDINANCE OR LAW COVERAGE
                        25%
91439       09-97    HURRICANE PERCENTAGE DEDUCTIBLE - FLORIDA
HO 04 90    04-90    PERSONAL PROPERTY REPLACEMENT COST
HO 04 16    04-91    PREMISES ALARM OR FIRE PROTECTION SYSTEM
                        PERCENT OF CREDIT -    2%
HO 04 20    06-94    SPECIFIED ADDL AMT OF INS COV. A DWELLING
                        25% OF COVERAGE A

THE FOLLOWING INFORMATION DETERMINED THE PREMIUM FOR THIS POLICY
------------------------------------------------------------------------
PROPERTY    CONSTRUCTION    FRAME                    YEAR BUILT 1985
            ROOF COMPOSITION            NO. OF FAMILIES/APARTMENTS    1

LOCATION    TERRITORY CODE        45    MILES FROM FIRE DEPARTMENT    3
            PREMIUM GROUP NUMBER   0    FEET FROM FIRE HYDRANT    1000
            PROTECTION CLASS       4    FIRE DISTRICT


OTHERS WITH AN INSURABLE INTEREST IN THE PROPERTY
------------------------------------------------------------------------
FIRST        SARASOTA COUNTY TAX COLLECTOR BARBARA FORD-COATES
MORTGAGEE:   PO BOX 1358
             SARASOTA            FL 34230-1358

HP89068-3 (Ed. 04/91)

PRODUCER'S COPY

04/14/2000 01:43:09
HM1211 3469BH

*060G0*        MC8        P2-002236

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ORDINANCE OR LAW - INCREASED AMOUNT OF COVERAGE

For the premium charged, the percentage applied to the Coverage A limit of liability, or for Form HO 00 04, the percentage applied to the Building Additions and Alterations limit of liability, under Additional Coverage 11. Ordinance or Law, is increased from 10% to the percentage shown below.

New Total Percentage        % *

This is Additional Coverage 10. in Forms HO 00 01 and HO 00 06.

* Entry may be left blank if shown elsewhere in the policy for this coverage.

All other provisions of this policy apply.

HO 04 77 06 94              Copyright, Insurance Services Office, Inc., 1994

**ROYAL &** **SUNALLIANCE**

**Coverage Update**
*Homeowners*

| Insured: | Run Date: | **01-27-00** | Producer: | **6866615** | Page: | **1** |
|---|---|---|---|---|---|---|

DOROTHY DE CESARE

1620 MEMORY LANE

SARASOTA        FL 34231-3710

BROWN & BROWN, INC.
P.O. BOX 1179
SARASOTA        FL  34230-1179

| Account Number | 501204863 | Policy Period | 06-03-1999 TO 06-03-2000 | 1 1F 12P |
|---|---|---|---|---|
| Policy Number | PKG 3469BH | Issued by | ROYAL INSURANCE COMPANY OF AMERICA (AN ILLINOIS CORPORATION) | |

**Coverage Changes**     Amendment Number     **1**     Endorsement Effective Date   **01-14-2000**

Revised Total Premium     **1,922.00**     Endorsement Premium     **NO CHANGE**
Premium Billed To  **INSURED**

*Premium adjustment based on changes listed below. This is not a bill.*

| | HOMEOWNER POLICY – SECTION I | | | | SECTION II | |
|---|---|---|---|---|---|---|
| **NEW** | DWELLING | OTHER STRUCTURES | PERSONAL PROPERTY | LOSS OF USE | PERSONAL LIABILITY | MED PAY |
| | COVERAGE A | COVERAGE B | COVERAGE C | COVERAGE D | COVERAGE E | COVERAGE F |
| | $ | $ | $ | $ | $ | $ |

| | HOMEOWNER POLICY – SECTION I | | | | SECTION II | |
|---|---|---|---|---|---|---|
| **OLD** | DWELLING | OTHER STRUCTURES | PERSONAL PROPERTY | LOSS OF USE | PERSONAL LIABILITY | MED PAY |
| | COVERAGE A | COVERAGE B | COVERAGE C | COVERAGE D | COVERAGE E | COVERAGE F |
| | $ | $ | $ | $ | $ | $ |

*Your policy has been changed as follows.*

ADDED:
FIRST MORTGAGEE

SARASOTA COUNTY TAX COLLECTOR BARBARA FORD-COATES
PO BOX 1358
SARASOTA        FL 34230-1358



BROWN & BROWN INSURANCE

RECEIVED
FEB 0 1 2000

SARASOTA, FLORIDA

Signed By: _Terry Broderick_

Not Valid Unless Signed By A Duly Authorized Representative Of The Company

Agent's Countersignature (If Required)                Date: _____

HP89069-1 (Ed. 04/91)



PRODUCER'S COPY

01/28/2000  00:39:22
HM1211 3469BH



# Coverage Summary
## Homeowners

ROYAL &
SUNALLIANCE

| | Insured: | Producer: | 6866615 | Page: | 1 |
|---|---|---|---|---|---|

**DOROTHY DE CESARE**

1620 MEMORY LANE

SARASOTA          FL 34231-3710

POE & BROWN, INC.
P.O. BOX 1179
SARASOTA          FL  34230-1179
941-366-5500

**Account Number** 501204863

**Policy Period** 06-03-1999 TO 06-03-2000          1 1F 12P

**Policy Number  PKG 3469BH**
**(RENEWAL CERTIFICATE)**

**Issued by**  ROYAL INSURANCE COMPANY OF AMERICA
(AN ILLINOIS CORPORATION)

---

### Your Coverage Summary

*Thank you for insuring with Royal & SunAlliance. Your Coverage Summary describes the home and other property covered by your policy, the types and amounts of coverage, and your premium. Your policy goes into effect at 12:01 A.M. standard time at the location insured.*

*Location of property insured:* 1620 MEMORY LANE
    (Residence Premises)

                    SARASOTA                    FL 34231-3710          **ADD SURCHARGES BELOW**

### Coverages

This is not a bill.
BILLABLE PARTY: INSURED

| Total Policy Premium | 1,922.00 |
|---|---|

*Home, Contents and Personal Liability*



**COVERAGE IS PROVIDED WHERE A PREMIUM OR LIMIT OF LIABILITY IS SHOWN FOR THE COVERAGE.**

| HOMEOWNER POLICY — SECTION I | | | | | SECTION II | |
|---|---|---|---|---|---|---|
| DWELLING | OTHER STRUCTURES | PERSONAL PROPERTY | LOSS OF USE | PERSONAL LIABILITY | MED PAY | BASIC PREMIUM |
| COVERAGE A | COVERAGE B | COVERAGE C | COVERAGE D | COVERAGE E | COVERAGE F | |
| $ 268,000 | $ 26,800 | $ 147,400 | $ 53,600 | $ 300,000 | $ 1,000 | $ 1,568.00 |

*In case of a loss under Section I of the policy, we cover only that part of the loss above the Deductible.*
*You have selected a Deductible of $       250/EXCEPT $ 5360( 2 %    HURRICANE)*

| | Additional Coverages and Credits | Amount of Coverage | Premium |
|---|---|---|---|
| | **SURCHARGES NOT INCLUDED IN POLICY PREMIUM** | | |
| | ** FLORIDA PROPERTY SURCHARGE | | 2.00 |
| | ************************ | | |
| | FLORIDA HURRICANE CATASTROPHE FUND RECOUPMENT | | |
| | INTRODUCED. SEE IMPORTANT NOTICE LI91454 | | |
| | ************************ | | |
| | YOUR POLICY HAS A SEPARATE HURRICANE DEDUCTIBLE | | |
| | SEE IMPORTANT NOTICE HP91485 | | |
| | ************************ | | |
| HO 04 77 | ORDINANCE OR LAW COVERAGE | | 156.00 |
| | PREMIUM/CREDIT FOR DEDUCTIBLES | | 103.00- |
| | FLORIDA HURRICANE CATASTROPHE FUND RECOUPMENT | | 129.00 |
| HO 04 90 | PERSONAL PROPERTY REPLACEMENT COST | | 156.00 |
| | INCREASES ABOVE LIMIT OF LIAB FOR COVC BY 25% | | |

Signed By:  *Terry Broderick*

Invoice # 15085    Date 4/1999 by SS    Date:

Not Valid Unless Signed By A Duly Authorized Representative Of The Company    Agent's Countersignature (If Required)

HP89068-1 (Ed. 04/91)



PRODUCER'S COPY

04/14/1999 01:50:54
HM1211 3469BH

^0F000^                    MCF                    P2-002168



**Amendments to your policy**          *Policy Number*  PKG 3469BH          *Page*    **3**

## RUN DATE 04-14-99

| Number | Edition | Description |
|--------|---------|-------------|

PRIOR ATTACHMENTS ARE STILL APPLICABLE.
NEW ATTACHMENTS, IF ANY, ARE INDICATED WITH AN ASTERISK.

| | | |
|---|---|---|
| BUILDING CODE EFFECTIVENESS GRADE | | 99 |
| HO 00 03 | 04-91 | HOMEOWNERS SPECIAL FORM |
| *HO 01 09 | 09-98 | SPECIAL PROVISIONS – FL |
| HO 04 96 | 04-91 | NO HOME DAY CARE COVERAGE |
| HO 04 77 | 06-94 | ORDINANCE OR LAW COVERAGE 25% |
| 91439 | 09-97 | HURRICANE PERCENTAGE DEDUCTIBLE – FLORIDA |
| HO 04 90 | 04-91 | PERSONAL PROPERTY REPLACEMENT COST |
| HO 04 16 | 04-91 | PREMISES ALARM OR FIRE PROTECTION SYSTEM PERCENT OF CREDIT –    2% |
| HO 04 20 | 06-94 | SPECIFIED ADDL AMT OF INS COV. A DWELLING 25% OF COVERAGE A |

THE FOLLOWING INFORMATION DETERMINED THE PREMIUM FOR THIS POLICY
--------------------------------------------------------------------

| PROPERTY | CONSTRUCTION   FRAME | | YEAR BUILT 1985 |
|----------|---------------------|---|-----------------|
| | ROOF COMPOSITION | NO. OF FAMILIES/APARTMENTS | 1 |
| | | | |
| LOCATION | TERRITORY CODE | 45 | MILES FROM FIRE DEPARTMENT   3 |
| | PREMIUM GROUP NUMBER | 0 | FEET FROM FIRE HYDRANT   1000 |
| | PROTECTION CLASS | 4 | FIRE DISTRICT |

HP89068-3 (Ed. 04/91)

Case 8:02-cv-01978-RAL    Document 1    Filed 10/25/02    Page 39 of 50 PageID 39



**Coverage Summary**
**Homeowners**

| Continued from Previous Page | | Policy Number | PKG 3469BH | Page 2 |
|---|---|---|---|---|

| Additional Coverages and Credits | Amount of Coverage | Premium |
|---|---|---|
| HO 04 16    PREMISES ALARM OR FIRE PROTECTION SYSTEM | | 31.00- |
| HO 04 20    SPECIFIED ADDL AMT OF INS COV. A DWELLING | | 47.00 |

YOUR TOTAL POLICY PREMIUM INCLUDES AN AMOUNT OF $    1694
FOR COVERAGE DUE TO LOSS FROM A HURRICANE AND    $     228
FOR ALL OTHER COVERED LOSSES.

*** FOR YOUR CONVENIENCE YOU ARE BEING BILLED
ACCORDING TO THE FOLLOWING SCHEDULE:
20% AND 8 INSTALLMENTS AT 10%

**POE & BROWN INSURANCE**
**APR 1 6 1999**
**SARASOTA, FLORIDA**

HP89068-2  (Ed. 04/91)

PRODUCER'S COPY

04/14/1999 01:50:54
HM1211 3469BH

*0F000*                MCF                        P2-002169

**Coverage Update**
Homeowners

| Insured: | Run Date: | 10-28-97 | Producer: | 6866615 | Page: | 1 |
|----------|-----------|----------|-----------|---------|-------|---|

DOROTHY   DECESARE
~~A.MICHAEL   DECESARE~~ deleted
PO BOX 20065

POE & BROWN, INC.
P.O. BOX 1179
SARASOTA        FL   34230

SARASOTA            FL  34276-3065

| Account Number | 501204863 | Policy Period | 06-03-1997 TO 06-03-1998 | 1F 12P |
|----------------|-----------|---------------|--------------------------|--------|
| Policy Number | PKG 3469BH | Issued by | ROYAL INSURANCE COMPANY OF AMERICA (AN ILLINOIS CORPORATION) | |

---

## Coverage Changes

| | | | |
|---|---|---|---|
| Amendment Number | 2 | Endorsement Effective Date | 10-16-1997 |
| Revised Total Premium   1,636.00 | | Endorsement Premium   NO CHANGE | |

Premium Billed To  INSURED

*Premium adjustment based on changes listed below. If applicable, you will receive a separate billing statement indicating the amount due.*

| | HOMEOWNER POLICY — SECTION I | | | | SECTION II | |
|---|---|---|---|---|---|---|
| NEW | DWELLING | OTHER STRUCTURES | PERSONAL PROPERTY | LOSS OF USE | PERSONAL LIABILITY | MED PAY |
| | COVERAGE A | COVERAGE B | COVERAGE C | COVERAGE D | COVERAGE E | COVERAGE F |
| | $ | $ | $ | $ | $ | $ |

| | HOMEOWNER POLICY — SECTION I | | | | SECTION II | |
|---|---|---|---|---|---|---|
| OLD | DWELLING | OTHER STRUCTURES | PERSONAL PROPERTY | LOSS OF USE | PERSONAL LIABILITY | MED PAY |
| | COVERAGE A | COVERAGE B | COVERAGE C | COVERAGE D | COVERAGE E | COVERAGE F |
| | $ | $ | $ | $ | $ | $ |

*Your policy has been changed as follows.*

AMENDED:
MAILING ADDRESS:   PO BOX 20065

                   SARASOTA FL 34276-3065

ADDED:
PREMISE ADDRESS:   1620 MEMORY LANE
                   SARASOTA FL 34231





POE & BROWN INSURANCE
NOV - 4 1997
SARASOTA, FLORIDA

---

Signed By: _____       Date: _____

*Not Valid Unless Signed By A Duly Authorized Representative Of The Company*    Agent's Countersignature (If Required)

PRODUCER COPY

HP89069-1  (Ed. 04/91)

10/29/1997 01:03:20
HM1211  3469BH

^0A0G0^          MCA          P2-002086



**Royal Insurance**

**Coverage Summary**
h̶̶meowners

| Insured: | | Producer: | 6866615 | Page: | 1 |

DOROTHY   DECESARE
A.MICHAEL   DECESARE
1620 MEMORY LANE

POE & BROWN, INC.
P.O. BOX 1179

SARASOTA       FL 34231

SARASOTA       FL  34230
941-366-5500

**Account Number** 501204863    **Policy Period** 06-03-1997 TO 06-03-1998    2F 12P

**Policy Number   PKG 3469BH**    **Issued by**    ROYAL INSURANCE COMPANY OF AMERICA
**(RENEWAL CERTIFICATE)**                  (AN ILLINOIS CORPORATION)

## Your Coverage Summary

Thank you for insuring with Royal Insurance. Your Coverage Summary describes the home and other property covered by your policy, the types and amounts of coverage, and your premium. Your policy goes into effect at 12:01 A.M. standard time at the location insured.

Location of property insured: **1620 MEMORY LANE**
   (Residence Premises)

            **SARASOTA**            **FL 34231**            **\*\*SEE SURCHARGES BELOW**

### Coverages

Home, Contents and
Personal Liability

**A Separate
Billing Statement    INSURED
Will Be Sent To**

| **Total Policy Premium** | **1,636.00** |

**COVERAGE IS PROVIDED WHERE A PREMIUM OR LIMIT OF LIABILITY IS SHOWN FOR THE COVERAGE.**

| HOMEOWNER POLICY — SECTION I | | | | | SECTION II | |
|---|---|---|---|---|---|---|
| DWELLING | OTHER STRUCTURES | PERSONAL PROPERTY | LOSS OF USE | PERSONAL LIABILITY | MED PAY | BASIC PREMIUM |
| COVERAGE A | COVERAGE B | COVERAGE C | COVERAGE D | COVERAGE E | COVERAGE F | |
| $ 243,000 | $ 24,300 | $ 133,650 | $ 48,600 | $ 300,000 | $ 1,000 | $ 1,418.00 |

In case of a loss under Section I of the policy, we cover only that part of the loss above the Deductible.
You have selected a Deductible of $        250/EXCEPT $ 4860( 2 %    WINDSTORM)

| Additional Coverages and Credits | Amount of Coverage | Premium |
|---|---|---|
| \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* | | |
| YOUR POLICY HAS A SEPARATE WIND DEDUCTIBLE | | |
| SEE IMPORTANT NOTICE HP91220 | | |
| \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* | | |
| HO 04 77   ORDINANCE OR LAW COVERAGE | | 141.00 |
| SURCHARGES NOT INCLUDED IN POLICY PREMIUM | | |
| FLORIDA PROPERTY SURCHARGE | | 2.00 |
| FLORIDA WIND RECOUPMENT SURCHARGE | | 99.79 |
| FLORIDA JUA RECOUPMENT SURCHARGE | | 14.06 |
| \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* | | |
| FLORIDA WIND RECOUPMENT SURCHARGE INTRODUCED | | |
| SEE IMPORTANT NOTICE LI91063 | | |
| \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* | | |
| FLORIDA JUA RECOUPMENT SURCHARGE INTRODUCED | | |

POE & BROWN INSURANCE

APR 18 1997

SARASOTA, FLORIDA

Signed By: _____
Not Valid Unless Signed By A Duly Authorized Representative Of The Company

Agent's Countersignature (If Required)    Date

PRODUCER COPY
81893
12
"09000"                    MCB

HP89068-1 (Ed. 04/91)

04/15/1997 02:45:58
HM1222 3469BH

P2-008467


**Royal Insurance**

*Coverage Summary*
Homeowners

| Continued from Previous Page | Policy Number | PKG 3469BH | Page 2 |
|---|---|---|---|

| Additional Coverages and Credits | Amount of Coverage | Premium |
|---|---|---|
| SEE IMPORTANT NOTICE HP91223 | | |
| ************************** | | |
| PREMIUM/CREDIT FOR DEDUCTIBLES | | 78.00- |
| ************************** | | |
| YOUR WINDSTORM/HAIL DEDUCTIBLE HAS CHANGED | | |
| SEE IMPORTANT NOTICE HP90755 | | |
| ************************** | | |
| HO 04 90   PERSONAL PROPERTY REPLACEMENT COST | | 141.00 |
| INCREASES ABOVE LIMIT OF LIAB FOR COVC BY 25% | | |
| HO 04 16   PREMISES ALARM OR FIRE PROTECTION SYSTEM | | 28.00- |
| HO 04 20   SPECIFIED ADDL AMT OF INS COV. A DWELLING | | 42.00 |

```
        *** FOR YOUR CONVENIENCE YOU ARE BEING BILLED
            ACCORDING TO THE FOLLOWING SCHEDULE:
            25% AT 60 DAYS
```

*PRODUCER COPY*

HP89068-2 (Ed. 04/91)

04/15/1997 02:45:58
HM1222  3469BH



"08000"            MC9                    P2-006488



**Royal Insurance**

Coverage Summary
Homeowners

| *Amendments to your policy* | *Policy Number* PKG 3469BH | *Page* 3 |
|---|---|---|

RUN DATE 04-15-97

| Number | Edition | Description |
|---|---|---|

PRIOR ATTACHMENTS ARE STILL APPLICABLE.
NEW ATTACHMENTS, IF ANY, ARE INDICATED WITH AN ASTERISK.

BUILDING CODE EFFECTIVENESS GRADE     99

| | | |
|---|---|---|
| HO 00 03 | 04-91 | HOMEOWNERS SPECIAL FORM |
| HO 01 09 | 02-95 | SPECIAL PROVISIONS - FL |
| HO 04 96 | 04-91 | NO HOME DAY CARE COVERAGE |
| HO 04 77 | 06-94 | ORDINANCE OR LAW COVERAGE |
| | | 25% |
| *91209 | 11-96 | WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE |
| HO 04 90 | 04-91 | PERSONAL PROPERTY REPLACEMENT COST |
| HO 04 16 | 04-91 | PREMISES ALARM OR FIRE PROTECTION SYSTEM |
| | | PERCENT OF CREDIT -  2% |
| HO 04 20 | 06-94 | SPECIFIED ADDL AMT OF INS COV. A DWELLING |
| | | 25% OF COVERAGE A |

THE FOLLOWING INFORMATION DETERMINED THE PREMIUM FOR THIS POLICY
----------------------------------------------------------------------------

| PROPERTY | CONSTRUCTION   FRAME | YEAR BUILT 1985 |
|---|---|---|
| | ROOF COMPOSITION | NO. OF FAMILIES/APARTMENTS    1 |
| | | |
| LOCATION | TERRITORY CODE            45 | MILES FROM FIRE DEPARTMENT    3 |
| | PREMIUM GROUP NUMBER    0 | FEET FROM FIRE HYDRANT    1000 |
| | PROTECTION CLASS          4 | FIRE DISTRICT |



MCS                                                                    P2-008489

# Royal Insurance

| Insured: | | Producer: | 6866615 | Page: | 1 |
|---|---|---|---|---|---|

DOROTHY   DECESARE
A.MICHAEL   DECESARE
1620 MEMORY LANE

SARASOTA          FL 34231

POE & BROWN, INC.
P.O. BOX 1179
SARASOTA          FL   34230
941-366-5500

**Account Number** 501204863          **Policy Period** 06-03-1996 TO 06-03-1997          2F 12P

**Policy Number**   PKG 3469BH          **Issued by**   ROYAL INSURANCE COMPANY OF AMERICA
(RENEWAL CERTIFICATE)                                    (AN ILLINOIS CORPORATION)

## Your Coverage Summary

*Thank you for insuring with Royal Insurance. Your Coverage Summary describes the home and other property covered by your policy, the types and amounts of coverage, and your premium. Your policy goes into effect at 12:01 A.M. standard time at the location insured.*

Location of property insured: 1620 MEMORY LANE
   (Residence Premises)

                SARASOTA                    FL 34231

## Coverages

*A Separate Billing Statement Will Be Sent To*   INSURED

Home, Contents and Personal Liability

| Total Policy Premium | 1,349.00 |
|---|---|

   **COVERAGE IS PROVIDED WHERE A PREMIUM OR LIMIT OF LIABILITY IS SHOWN FOR THE COVERAGE.**

| HOMEOWNER POLICY -- SECTION I | | | | SECTION II | | |
|---|---|---|---|---|---|---|
| DWELLING | OTHER STRUCTURES | PERSONAL PROPERTY | LOSS OF USE | PERSONAL LIABILITY | MED PAY | BASIC PREMIUM |
| COVERAGE A | COVERAGE B | COVERAGE C | COVERAGE D | COVERAGE E | COVERAGE F | |
| $ 231,000 | $ 23,100 | $ 127,050 | $ 46,200 | $ 300,000 | $ 1,000 | $ 1,180.00 |

*In case of a loss under Section I of the policy, we cover only that part of the loss above the Deductible.*
*You have selected a Deductible of $     250/EXCEPT $ 4620( 2 %     WINDSTORM)*

| Additional Coverages and Credits | Amount of Coverage | Premium |
|---|---|---|
| HO 04 77     ORDINANCE OR LAW COVERAGE | | 117.00 |
| SURCHARGES NOT INCLUDED IN POLICY PREMIUM | | |
| FLORIDA PROPERTY SURCHARGE | | 2.00 |
| FLORIDA WIND RECOUPMENT SURCHARGE | | 82.28 |

*************************
FLORIDA WIND RECOUPMENT SURCHARGE INTRODUCED
    SEE IMPORTANT NOTICE HP90755
*************************

| PREMIUM/CREDIT FOR DEDUCTIBLES | | 77.00- |
|---|---|---|

*************************
YOUR WINDSTORM/HAIL DEDUCTIBLE HAS CHANGED
    SEE IMPORTANT NOTICE HP90755
*************************

| HO 04 90     PERSONAL PROPERTY REPLACEMENT COST | | 117.00 |
|---|---|---|

POE & BROWN INSURANCE

APR 23 1996

SARASOTA, FLORIDA

Signed By: _____

*Not Valid Unless Signed By A Duly Authorized Representative Of The Company*

Agent's Countersignature

HP89068-1  (Ed. 04/91)

PRODUCER COPY
Invoice #  41777   Date 4 23 96 by SH   04/19/96  02:55:40
Commission rate     15 %



0A000          MCA          42-010601



**Coverage Summary**
*Homeowners*

| Continued from Previous Page | | Policy Number **PKG 3469BH** | Page **2** |

| Additional Coverages and Credits | Amount of Coverage | Premium |
| --- | --- | --- |
| HO 04 16   INCREASES ABOVE LIMIT OF LIAB FOR COVC BY 25%<br>            PREMISES ALARM OR FIRE PROTECTION SYSTEM | | 23.00- |
| HO 04 20   SPECIFIED ADDL AMT OF INS COV. A DWELLING | | 35.00 |

**\*\*\* FOR YOUR CONVENIENCE YOU ARE BEING BILLED**
**ACCORDING TO THE FOLLOWING SCHEDULE:**
**25% AT 60 DAYS**

*PRODUCER COPY*

HP89068-2 (Ed. 04/91)
04/19/96 02:55:40



9AD00          MCA          42-010802

| *Amendments to your policy* | *Policy Number* | PKG 3469BH | *Page* | 3 |

| **Number** | **Edition** | **Description** |
|---|---|---|

PRIOR ATTACHMENTS ARE STILL APPLICABLE.
NEW ATTACHMENTS, IF ANY, ARE INDICATED WITH AN ASTERISK.

| | | |
|---|---|---|
| HO 00 03 | 04-91 | HOMEOWNERS SPECIAL FORM |
| HO 01 09 | 02-95 | SPECIAL PROVISIONS |
| HO 04 96 | 04-91 | NO HOME DAY CARE COVERAGE |
| HO 04 77 | 06-94 | ORDINANCE OR LAW COVERAGE |
| | | 25% |
| 90432 | 12-94 | WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE |
| HO 04 90 | 04-91 | PERSONAL PROPERTY REPLACEMENT COST |
| HO 04 16 | 04-91 | PREMISES ALARM OR FIRE PROTECTION SYSTEM |
| | | PERCENT OF CREDIT -    2% |
| HO 04 20 | 06-94 | SPECIFIED ADDL AMT OF INS COV. A DWELLING |
| | | 25% OF COVERAGE A |

*PRODUCER COPY*

HP89068-3 (Ed. 04/91)
04/19/96 02:55:40





9A000          MCA                    42-010803

89037



**Royal Insurance**

Coverage Summary
Homeowners

| For your information | | Policy Number **PKG 3469BH** | Page **4** |
|---|---|---|---|
| *The following information determined the premium for this policy* | | *Run Date:* **04-19-96** | |

| | Category | Description | | Category | Description |
|---|---|---|---|---|---|
| **Property** | Construction | **FRAME** | | Year Built | **1985** |
| | Roof | **COMPOSITION** | | No. of Families/Apartments | **1** |
| **Location** | Territory Code | **45** | | Miles from Fire Department | **3** |
| | Premium Group Number | **88** | | Feet from Fire Hydrant | **1000** |
| | Protection Class | **4** | | Fire District | |

*Others With an Insurable Interest in the Property*

**PRODUCER COPY**

*HP89058-5 (Ed. 04/91)*

**04/19/96 02:55:40**



0A000          MCA          42-010604

8903

# Royal Insurance

**Coverage Summary**
Homeowners

| Insured: | Producer: | 6866615 | Page: | 1 |
|---|---|---|---|---|

DOROTHY   DECESARE
A.MICHAEL   DECESARE
1620 MEMORY LANE

SARASOTA        FL 34231

POE & BROWN, INC.
P.O. BOX 1179
SARASOTA        FL  34230
813-366-5500

Account Number 501204863     Policy Period 06-03-1995 TO 06-03-1996     2F 12P

Policy Number   PKG 3469BH     Issued by   ROYAL INSURANCE COMPANY OF AMERICA
(DECLARATIONS)                                   (AN ILLINOIS CORPORATION)

**Your Coverage Summary**     7/24/95- Called to billing to go out 8/3/95

Thank you for insuring with Royal Insurance. Your Coverage Summary describes the home and other property covered by your policy, the types and amounts of coverage, and your premium. Your policy goes into effect at 12:01 A.M. standard time at the location insured.

Location of property insured: 1620 MEMORY LANE
   (Residence Premises)

            SARASOTA            FL 34231

Invoice # 20477 Date 7/11/95 by. Sg

Commission rate                    %

**Coverages**

Home, Contents and
Personal Liability

A Separate
Billing Statement   INSURED
Will Be Sent To

| Total Policy Premium | 1,316.00 |
|---|---|

**COVERAGE IS PROVIDED WHERE A PREMIUM OR LIMIT OF LIABILITY IS SHOWN FOR THE COVERAGE.**

| HOMEOWNER POLICY -- SECTION I | | | | | SECTION II | |
|---|---|---|---|---|---|---|
| DWELLING | OTHER STRUCTURES | PERSONAL PROPERTY | LOSS OF USE | PERSONAL LIABILITY | MED PAY | BASIC PREMIUM |
| COVERAGE A | COVERAGE B | COVERAGE C | COVERAGE D | COVERAGE E | COVERAGE F | |
| $ 225,000 | $ 22,500 | $ 123,750 | $ 45,000 | $ 300,000 | $ 1,000 | $ 1,152.00 |

In case of a loss under Section I of the policy, we cover only that part of the loss above the Deductible.
You have selected a Deductible of $       250/EXCEPT $ 4500( 2 %   WINDSTORM)

| | Additional Coverages and Credits | Amount of Coverage | Premium |
|---|---|---|---|
| HO 04 77 | ORDINANCE OR LAW COVERAGE | | 114.00 |
| | SURCHARGES NOT INCLUDED IN POLICY PREMIUM | | 2.00 |
| | FLORIDA PROPERTY SURCHARGE | | |
| | PREMIUM/CREDIT FOR DEDUCTIBLES | | 75.00- |
| HO 04 90 | PERSONAL PROPERTY REPLACEMENT COST | | 114.00 |
| | INCREASES ABOVE LIMIT OF LIAB FOR COVC BY 25% | | |
| HO 04 16 | PREMISES ALARM OR FIRE PROTECTION SYSTEM | | 23.00- |
| HO 04 20 | SPECIFIED ADDL AMT OF INS COV. A DWELLING | | 34.00 |

*** FOR YOUR CONVENIENCE, YOU ARE BEING BILLED
ACCORDING TO THE FOLLOWING SCHEDULE:
4 INSTALLMENTS AT .25

POE & BROWN INS INC
RECEIVED
JUL 1 1 1995
SARASOTA, FLORIDA

Signed By: _____
Not Valid Unless Signed by A Duly Authorized Representative Of The Company

Susan W. Bosdeld   Date: _____
Agent's Countersignature (If Required)

PRODUCER COPY

HP89068-1 (Ed. 04/91)

07/01/95 03:54:52

0B000        MCB        42-015828



**Coverage Summary**
*Homeowners*

**Royal Insurance**

| | | |
|---|---|---|
| *Amendments to your policy* | Policy Number **PKG 3469BH** | Page **2** |

| Number | Edition | Description |
|---|---|---|
| HO 00 03 | 04-91 | HOMEOWNERS SPECIAL FORM |
| HO 01 09 | 02-95 | SPECIAL PROVISIONS |
| HO 04 96 | 04-91 | NO HOME DAY CARE COVERAGE |
| HO 04 77 | 06-94 | ORDINANCE OR LAW COVERAGE 25% |
| 90432 | 12-94 | WINDSTORM OR HAIL PERCENTAGE DEDUCTIBLE |
| HO 04 90 | 04-91 | PERSONAL PROPERTY REPLACEMENT COST |
| HO 04 16 | 04-91 | PREMISES ALARM OR FIRE PROTECTION SYSTEM PERCENT OF CREDIT — 2% |
| HO 04 20 | 06-94 | SPECIFIED ADDL AMT OF INS COV. A DWELLING 25% OF COVERAGE A |

*PRODUCER COPY*

HP89068-3 (Ed. 04/91)
07/01/95 03:54:52



08000          MCB          42-015829

 
| **For your information** | Policy Number **PKG 3469BH** | Page **3** |
|---|---|---|
| *The following information determined the premium for this policy* | *Run Date:* **06-30-95** | |

| | Category | Description | Category | Description |
|---|---|---|---|---|
| **Property** | Construction **FRAME** | | **Year Built** | **1985** |
| | Roof **COMPOSITION** | | **No. of Families/Apartments** | **1** |
| **Location** | **Territory Code** | **45** | **Miles from Fire Department** | **3** |
| | **Premium Group Number** | **88** | **Feet from Fire Hydrant** | **1000** |
| | **Protection Class** | **4** | **Fire District** | |

*Others With an Insurable Interest in the Property*



0B000                    MCB                    42-015830